IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JERRY S.,<br><br>               Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner<br>of Social Security,<br><br>               Defendant. | MEMORANDUM DECISION AND<br>ORDER<br><br><br><br>Case #4:22-cv-00013-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Jerry S.'s appeal from the decision of the Social Security Administration denying his application for disability insurance benefits and supplemental security income. The Court will reverse and remand for the immediate award of benefits.

## I.  STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether their findings are supported by substantial evidence and whether the correct legal standards were applied.[1] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[2] The ALJ is required to consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[3] If supported by substantial evidence, the Commissioner's findings are conclusive and must be

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[3] *Id.* at 1009–10.

affirmed.[4] The Court must evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[5] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[6]

## II.  BACKGROUND

A.    PROCEDURAL HISTORY

In February 2012, Plaintiff filed an application for disability and disability insurance benefits, as well as supplemental security income, alleging disability beginning on October 15, 2011.[7] The claim was denied initially and upon reconsideration.[8] Plaintiff then requested a hearing before an ALJ, which was held on February 18, 2014.[9] At the initial hearing, Plaintiff testified that he used to work as a diesel mechanic before he injured his hand, which made him unable to complete that work.[10] The ALJ issued a partially favorable decision, finding that Plaintiff was disabled as of August 22, 2013.[11] Plaintiff appealed to the Appeals Council, which remanded the case back to the ALJ.[12]

---

[4] *Richardson*, 402 U.S. at 390.

[5] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[7] R. at 363–69, 370–78.

[8] *Id.* at 160–63.

[9] *Id.* at 89–131.

[10] *Id.* at 97–100.

[11] *Id.* at 192–215.

[12] *Id.* at 281, 217–21.

A remand hearing was held on June 22, 2016.[13] Plaintiff testified that his back and shoulder pain prevented him from working.[14] His pain limited how long he could walk and sit before needing to lie down.[15] He stated that he took pain medication to treat his back.[16] Plaintiff testified that he had rage issues and was on a waiting list to obtain treatment.[17] Plaintiff also stated that he suffered from irritable bowel syndrome, which required him to be close to a bathroom at all times.[18] Plaintiff testified that he was able to care for his animals and was able to clean up after himself.[19]  However, he stated that he required help with laundry, vacuuming, and grocery shopping.[20] The ALJ issued an unfavorable decision on November 16, 2016.[21] The Appeals Council denied Plaintiff's request for review on May 15, 2017.[22] Plaintiff sought review by this Court in June 2017.[23] The Commissioner filed an unopposed motion to remand, which the Court granted.[24]

---

[13] *Id.* at 48–88.

[14] *Id.* at 60.

[15] *Id.* at 66–67.

[16] *Id.* at 62.

[17] *Id.*

[18] *Id.* at 67.

[19] *Id.* at 63.

[20] *Id.* at 64.

[21] *Id.* at 23–47.

[22] *Id.* at 7–12.

[23] *Id.* at 1–6.

[24] *Id.* at 897–98.

A second remand hearing was held on March 5, 2019.[25] During that hearing, Plaintiff testified that he experienced shoulder pain and that he could hardly use his left hand as a result of his prior injury.[26] The ALJ once again issued an unfavorable decision on May 23, 2019.[27] The Appeals Council denied review on March 13, 2020.[28] Plaintiff brought suit in this Court and the case was once again remanded.[29]

A third remand hearing was held on November 18, 2021.[30] Plaintiff testified that his hand condition remained the same.[31] The ALJ again found Plaintiff not disabled.[32] Plaintiff now brings this third federal suit.

B.      MEDICAL HISTORY

Plaintiff alleged disability based on back and leg pain, a hand injury, high blood pressure, depression, anxiety, and irritable bowel syndrome.[33] Plaintiff also reported a torn right rotator cuff that limits his movement.[34]

In 2010, Plaintiff suffered fractures and lacerations on his dominant left hand while working on a radiator fan.[35] Plaintiff's injury damaged three fingers and required surgery,

---

[25] *Id.* at 834–59.

[26] *Id.* at 843–44.

[27] *Id.* at 808–33.

[28] *Id.* at 801–07.

[29] *Id.* at 1725–37.

[30] *Id.* at 1705–17.

[31] *Id.* at 1711.

[32] *Id.* at 1364–92.

[33] *Id.* at 432.

[34] *Id.* at 452.

[35] *Id.* at 556.

resulting in a partial amputation of one finger.[36] Plaintiff underwent another hand surgery in

January 2011.[37] In April 2011, Plaintiff was diagnosed with complex regional pain syndrome in

his upper left extremity and was treated with ganglion block injections.[38] The medical evidence

shows that Plaintiff continued to report pain and limited ability to use his left hand.[39] Plaintiff's

pain has been treated with medication, which helped somewhat.[40]

---

[36] *Id.* at 557.

[37] *Id.* at 574.

[38] *Id.* at 587.

[39] *Id.* at 611–31, 657, 658, 663, 664, 669, 670, 675, 676, 681, 687, 688, 693, 694, 699, 700, 722, 723, 725, 726, 728, 729, 731, 732,  734, 735, 737, 738, 740, 741, 743, 744, 746, 747, 749, 750, 753, 754, 756, 757, 761, 762, 765, 766, 769, 770, 773, 774, 781, 1096, 1098, 1102, 1103, 1107, 1108, 1112, 1113, 1117, 1118, 1122, 1123, 1127, 1128, 1132, 1133, 1137, 1138, 1142, 1143, 1147, 1152, 1153, 1157, 1158, 1162, 1163, 1167, 1168, 1171, 1172, 1175, 1176, 1179, 1180, 1183, 1184, 1187, 1188, 1191, 1192, 1195, 1196, 1199, 1200, 1203, 1204, 1208, 1209, 1212, 1213, 1216, 1217, 1220, 1221, 1224, 1225, 1228, 1229, 1232, 1233, 1236, 1237, 1240, 1241, 1244, 1245, 1248, 1249, 1253, 1254, 1257, 1258, 1261, 1262, 1265, 1266, 1269, 1270, 1273, 1274, 1277, 1278, 1281, 1282, 1285, 1286, 1289, 1290, 1293, 1294, 1297, 1298, 1301, 1302, 1305, 1306, 1309, 1310, 1313, 1314, 1317, 1318, 1322, 1323, 1326, 1327, 1331, 1332, 1336, 1337, 1340, 1341, 1344, 1345, 1348, 1349, 1352, 1353, 1356, 1357, 1360, 1361, 1393, 1395, 1399, 1401, 1405, 1407, 1411, 1413, 1417, 1419, 1423, 1425, 1429, 1431, 1435, 1437, 1441, 1443, 1447, 1449, 1453, 1455, 1459, 1461, 1465, 1467, 1471, 1473, 1477, 1479, 1483, 1485, 1491, 1493, 1497, 1499, 1503, 1505, 1509, 1511, 1515, 1517, 1521, 1523, 1527, 1529, 1533, 1535, 1539, 1541, 1545, 1547, 1551, 1553, 1559, 1561, 1567, 1569, 1573, 1575, 1581, 1582, 1586, 1587, 1591, 1592, 1596, 1597, 1601, 1602, 1606, 1607, 1611, 1612, 1616, 1617, 1621, 1622, 1626, 1627, 1631, 1632, 1636, 1637, 1641, 1642, 1646, 1647, 1651, 1652, 1656, 1657, 1660, 1661, 1664, 1665, 1668, 1669, 1672, 1673, 1676, 1677, 1681, 1682, 1686, 1687, 1691, 1692, 1696, 1697, 1701, 1702, 1885, 1895, 1898, 1915.

[40] *Id.* at 661, 663, 668, 669, 673, 675, 680, 681, 686, 687, 692, 693, 697, 699, 703, 724, 727, 730, 733, 736, 739, 742, 745, 748, 751, 755, 758, 763, 768, 772, 776, 1097, 1103, 1108, 1113, 1118, 1123, 1128, 1133, 1138, 1143, 1150, 1155, 1160, 1165, 1170, 1174, 1178, 1182, 1186, 1190, 1194, 1198, 1202, 1206, 1338, 1342, 1346, 1350, 1354, 1358, 1362, 1394, 1400, 1406, 1412, 1418, 1421, 1430, 1436, 1442, 1448, 1454, 1460, 1466, 1472, 1478, 1484, 1492, 1498, 1504, 1510, 1516, 1522, 1528, 1534, 1540, 1546, 1552, 1560, 1568, 1574, 1582, 1587, 1592, 1597, 1602, 1607, 1612, 1617, 1622, 1627, 1632, 1637, 1642, 1647, 1652, 1657, 1661, 1665, 1669, 1673, 1677, 1682, 1687, 1692, 1697, 1702.

In June 2012, Plaintiff underwent x-rays. These showed moderate degenerative changes of the lumbar spine.[41] He had mild progression of degenerative changes in the thoracic spine.[42] He also had osteopenia and degenerative changes in his right shoulder.[43]

## C.    THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 15, 2011, the alleged onset date.[44] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: right rotator cuff tear, degenerative joint disease of the left shoulder, degenerative disc disease of the lumbar and thoracic spine, complex regional pain syndrome, and obesity.[45] The ALJ found that Plaintiff's left hand injury was not a severe impairment and that Plaintiff had no manipulative limitations.[46] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[47] The ALJ determined that Plaintiff had the residual functional capacity to perform light work, with certain modifications.[48] At step four, the ALJ determined that Plaintiff could not perform any past relevant work.[49] At step five, the ALJ found that there

---

[41] *Id.* at 646.

[42] *Id.* at 647.

[43] *Id.* at 648.

[44] *Id.* at 1369.

[45] *Id.* at 1370–71.

[46] *Id.* at 1371.

[47] *Id.* at 1371–73.

[48] *Id.* at 1373–81.

[49] *Id.* at 1381.

were other jobs that exist in significant numbers in the national economy that Plaintiff could

perform and, therefore, he was not disabled.[50]

### III.  DISCUSSION

Plaintiff raises four issues in his brief: (1) whether the ALJ erred in his evaluation of

Plaintiff's upper extremity limitations and their impact on his RFC assessment; (2) whether the

ALJ failed to properly evaluate the medical opinion evidence; (3) whether the ALJ erred at step

five of the evaluation process; and (4) whether benefits should be awarded.

### A.      UPPER EXTREMITY IMPAIRMENT

This matter has been pending before the agency for over a decade. In all that time, except

for the most recent decision, Plaintiff was found to have a severe impairment with his left hand

resulting in manipulative limitations because of the workplace injury he suffered in 2010. The

latest decision eschews any such limitations and, by doing so, finds that there are jobs that exist

in significant numbers that Plaintiff can perform. Had the ALJ concluded that Plaintiff was

limited to occasional handling and fingering with his left hand, as each ALJ had previously done,

those jobs would be unavailable.[51] Thus, the key question is whether the ALJ's findings that

Plaintiff's left-hand injury was not severe and did not result in limitations are supported by

substantial evidence.

In determining an RFC, an ALJ is required to consider the limiting effects of all of a

claimant's impairments, even those that are found to be non-severe.[52] As is detailed above, the

---

[50] *Id.* at 1381–83.

[51] *Id.* at 1716.

[52] 20 C.F.R. §§ 404.1545(e), 416.945(e); *see also* SSR 96–8P, 1996 WL 374184, at *5
(July 2, 1996).

record is replete with references to Plaintiff's hand injury and the limitations that result from that injury. In each previous decision, the ALJs consistently found Plaintiff's left-hand injury constituted a severe impairment and limited him to occasional fingering and handling.[53] While the ALJ was not bound by these prior decisions, it is evidence available for him to consider.[54] Moreover, the previous decisions are largely consistent with the opinions of the state agency physicians who reviewed the record and opined that Plaintiff had limitations in handling and fingering.[55] The prior decisions were also consistent with the objective medical evidence, which continually showed that Plaintiff complained of pain and that he had limited use of his dominant hand. Despite the overwhelming evidence that Plaintiff's hand injury was severe and resulted in manipulative limitations, this ALJ found the opposite. This conclusion is not supported by substantial evidence. Examining the entire record, as well as the specific evidence relied upon by the ALJ to reach this conclusion, demonstrates why.

The ALJ's determination that Plaintiff's hand injury was not severe and did not result in limitations is premised on only two pieces of evidence: a medical report completed after a single examination; and a selective reading of an independent medical evaluation completed for Plaintiff's worker's compensation claim. Both will be discussed.

Plaintiff was examined by Justin R. Johnsen, M.D., in June 2012.[56] Dr. Johnsen diagnosed left finger amputation, remote fracture T11 in back, high blood pressure, irritable

---

[53] R. at 29, 32, 199, 206, 813–14.

[54] 20 C.F.R. § 404.1513(a)(4) (Agency regulation stating that "our administrative records" are considered "[e]vidence from nonmedical sources.").

[55] R. at 142–43, 174–75.

[56] *Id.* at 651–55.

bowel syndrome, and right rotator cuff injury. Plaintiff reported that his hand-related symptoms included difficulty gripping and loss of sensation in his hand. Plaintiff related that this condition affects his ability to work because he drops things and lacks coordination. Dr. Johnsen noted that Plaintiff was missing the tip of his left index finger and had difficulty manipulating a pen. Dr. Johnsen stated that Plaintiff was able to button and unbutton a shirt, pick up a coin from a table, grasp a pen and write a sentence, and lift, carry, and handle large objects. However, Dr. Johnsen's report does not make clear whether these activities were done with Plaintiff's left or right hand, or both. In sum, Dr. Johnsen opined that Plaintiff's hand injury would, at most, cause mild limitations lifting heavy objects. Despite noting decreased grip strength in Plaintiff's left hand, Dr. Johnsen believed that Plaintiff would be able to perform a majority of activities without limitations, other than perhaps manipulating a pen.

The ALJ gave Dr. Johnsen's opinion "great weight." The ALJ found that Dr. Johnsen's opinion was consistent with the objective medical evidence, physical and neurological examinations, Dr. Johnsen's own examination, documented reports, the course of routine and conservative treatment, and the record as a whole. This finding is not supported by substantial evidence. Rather, the record shows that Plaintiff continually complained of pain in his left hand, sought treatment for his injury, and was assessed as having limited capabilities with that hand. It is only Dr. Johnsen who opines otherwise. Dr. Johnsen's unsupported opinion does not provide substantial evidence to support the ALJ's finding. The Tenth Circuit has made clear that "[e]vidence is not substantial if it is overwhelmed by other evidence in the record."[57]

---

[57] *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Moreover, even Dr. Johnsen's evaluation does not support the ALJ's finding that Plaintiff had no manipulative limitations. Dr. Johnsen observed that Plaintiff had decreased grip strength, difficulty manipulating a pen, and opined that Plaintiff would have difficulty using a pen. It is difficult to reconcile this assessment with the ALJ's conclusion that Plaintiff had absolutely "no fine or gross manipulative limitations."[58] Finally, as will be discussed below, the factors the ALJ must consider in evaluating Dr. Johnsen's opinion do not support the ALJ's decision to give it great weight.

The ALJ also relied on an evaluation by Bart Fotheringham, M.D., who evaluated Plaintiff in relation to his worker's compensation claim.[59] The ALJ points to a statement in Dr. Fotheringham's report, wherein he states that "I feel that [Plaintiff] is capable of returning back to full duty and he agrees with that."[60] But the ALJ's reading of Dr. Fotheringham's report is selective and incomplete. In the very next sentence, Dr. Fotheringham imposed a limit on gripping and grasping.[61] Dr. Fotheringham stated that Plaintiff could occasionally grip or grasp, but could not do so constantly.[62] Moreover, Dr. Fotheringham concluded that Plaintiff's hand injury resulted in a 20% impairment of his left hand and an 18% impairment of his upper extremity.[63] Thus, Dr. Fotheringham's evaluation does not support the ALJ's conclusion that Plaintiff's hand injury was non-severe and did not result in any limitations. Just the opposite, Dr.

---

[58] R. at 1371.

[59] *Id.* at 597–608.

[60] *Id.* at 606.

[61] *Id.* While Dr. Fotheringham places this limit on Plaintiff's right hand, this is clearly a typographical error.

[62] *Id.*

[63] *Id.* at 607–08.

Fotheringham noted the severity of Plaintiff's injury and imposed limitations on gripping and grasping because of that injury. This is consistent with the medical evidence and Plaintiff's testimony.

These two reports are the only affirmative evidence the ALJ cites to support his opinion on this issue. The ALJ discussed the other medical opinion evidence but discounted any opinion that included manipulative limitations. The ALJ failed to address the substantial medical evidence that demonstrated limitations in Plaintiff's ability to use his dominant hand and, indeed, made several incorrect statements about his injury. For example, the ALJ stated that Plaintiff's follow-up after his initial surgery was unremarkable.[64] But this was not the case. As the ALJ notes in the very next paragraph of his opinion, Plaintiff was required to undergo a follow-up surgery because the wound was not healing.[65] The ALJ also relied on Dr. Johnsen's statement that Plaintiff had a "very slight" finger amputation. However, the record is clear that Plaintiff received substantial injuries during his workplace accident, with damage to three of his fingers and a partial amputation down to the first knuckle on one of them. It is hard to classify this type of injury as "slight." Moreover, Plaintiff continued to complain of pain and receive treatment for this injury and was noted has having limitations in his ability to use his hand. The ALJ's selective reading of the record to reach the conclusion that Plaintiff had no manipulative limitations in his left hand is simply not supported by substantial evidence.

---

[64] *Id.* at 1370.

[65] *Id.*

B.     MEDICAL OPINION EVIDENCE

Plaintiff also challenges the ALJ's treatment of the medical opinion evidence.[66] An ALJ must review every medical opinion.[67] In reviewing the opinions of treating sources, the ALJ must engage in a sequential analysis.[68] First, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory techniques.[69] If the ALJ finds that the opinion is well-supported, then he must confirm that the opinion is consistent with other substantial evidence in the record.[70] If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[71]

This does not end the analysis, however. Even if a physician's opinion is not entitled to controlling weight, that opinion must still be evaluated using certain factors.[72] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[73]

---

[66] Since Plaintiff's application was filed prior to March 27, 2017, the older regulations apply.

[67] 20 C.F.R. § 404.1527(c).

[68] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[69] *Id.*

[70] *Id.*

[71] *Id.*

[72] *Id.*

[73] *Id.* at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

After considering these factors, the ALJ must give good reasons for the weight he ultimately assigns the opinion.[74] If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.[75]

1.   *Justin Johnsen, M.D.*

Dr. Johnsen's evaluation has been discussed in detail above. The ALJ gave Dr. Johnsen's opinion great weight. Under the relevant factors, this conclusion is not supported. First, Plaintiff was seen by Dr. Johnsen a single time. Thus, there is no longitudinal relationship. Second, the type of testing performed is less than clear from Dr. Johnsen's report. While Dr. Johnsen stated that Plaintiff could button and unbutton a shirt, pick up a coin from a table, grasp a pen and write a sentence, and lift, carry, and handle light objects, it is unclear how these tasks were performed. Third, as discussed, Dr. Johnsen's opinion is not supported by and is inconsistent with the record as a whole. Fourth, Dr. Johnsen is not a specialist in the area in which he rendered his opinion. Rather, as Plaintiff points out, he is an oculoplastic surgeon. Under the relevant factors, Dr. Johnsen's opinion was not entitled to great weight.

2.   *Dennis Taggart, M.D. and Stewart Ellington, M.D.*

Dr. Taggart and Dr. Ellington are state agency physicians who reviewed the record in this case.[76] Relevant here, they opined that Plaintiff was limited in handling and fingering with his left hand. The ALJ gave the opinions of Dr. Taggart and Dr. Ellington some weight. The ALJ largely adopted the limitations opined by the state agency physicians but noted that he disagreed

---

[74] *Id.*

[75] *Id.*

[76] R. at 132–59, 164–91.

with the limitation on handling and fingering. However, the ALJ fails to set out a reasoned analysis as to why he rejected only this part of the state agency physician's opinions.

As discussed, the ALJ's decision to find that Plaintiff's hand injury was non-severe and his failure to include any manipulative limitations is not supported by substantial evidence. Both Dr. Taggart and Dr. Ellington (after reviewing the medical evidence, something Dr. Johnsen did not do) concluded that Plaintiff's hand injury was a severe impairment that would result in limitations. While the ALJ was not required to adopt these limitations, he was required to explain why he rejected them.

### 3. *Rox Burkett, M.D. and Douglas Callahan, D.O.*

Dr. Burkett submitted a medical source statement dated January 17, 2014.[77] Dr. Burkett diagnosed Plaintiff with advanced thoracic and lumbar spine disc disease with radicular pain in his right leg, degenerative arthritis in the right shoulder, and severe left-hand injury with trauma and pain. Dr. Burkett opined that Plaintiff's pain and stress levels were severe enough to constantly interfere with the attention and concentration needed to perform simple work tasks. Dr. Burkett stated that Plaintiff could walk half a block, climb steps at a reasonable pace, and would have some problems balancing when ambulating with pain medications. Dr. Burkett stated that Plaintiff was limited in his ability to stoop and bend and would need to lie down/recline during a workday. Dr. Burkett opined that Plaintiff could sit for one hour at a time and stand or walk for 10 to 15 minutes at a time. Additionally, Plaintiff could sit for four to five hours in a workday and could stand and walk for less than one hour. He would require one to two

---

[77] *Id.* at 777–80.

unscheduled breaks lasting 20 minutes each. Dr. Burkett further opined that Plaintiff would likely be off task more than 30 percent of the workday, would be absent from work five or more days per month, and would be able to perform a job on a sustained basis less than fifty percent of the time when compared to an average worker.

Dr. Callahan submitted a medical source statement on May 24, 2016.[78] Dr. Callahan diagnosed Plaintiff with complex regional pain syndrome of the left upper limb, pain in the left hand, and chronic back pain. Dr. Callahan stated that Plaintiff could not walk one block without rest, could not climb steps without use of a handrail, and was limited in his ability to stoop, crouch, and bend. He also opined that Plaintiff would need to lie down/recline for 45 minutes because of pain and would need to lie down or recline for about three hours in an 8-hour workday. Dr. Callahan stated that Plaintiff could sit for 45 minutes at a time and stand for 20 minutes at a time. Additionally, Plaintiff was limited in his ability to use his fingers, hands, and arms. Dr. Callahan also stated that Plaintiff could not reach overhead with either arm at all. He also opined that Plaintiff would be off task more than 30% of the workday, would be absent from work five or more days per month, and would be more than 50% less efficient than an average worker.

The ALJ gave these opinions little weight. As for Dr. Burkett, the ALJ discounted his opinion because it was not based on a treating relationship. However, this is also true of Dr. Johnsen's opinion, which the ALJ afforded great weight. The ALJ's failure to reconcile this discrepancy in treatment is problematic. "After all, in the law, what is sauce for the goose is

---

[78] *Id.* at 797–800.

normally sauce for the gander."[79] The ALJ also stated that it was unclear what the objective findings were or what specific records Dr. Burkett considered in forming his opinion. However, this ignores the fact that Dr. Burkett actually testified at the initial hearing and explained the documents he had reviewed in rendering his opinion.[80] The ALJ cannot simply ignore the evidence in the record that detracts from his opinion. The ALJ also found that the reports from Dr. Burkett and Dr. Callahan were not consistent with the record. But for substantially the same reasons already discussed, this is not the case. While there may have been good reasons to discount these opinions, or at least portions of them, the ALJ did not articulate any. As a result, the ALJ's evaluation of the medical opinion evidence was erroneous.

C.    STEP FIVE

        Plaintiff also argues that the ALJ erred at step five. "On step five, after the claimant has established at step four that he or she cannot return to his or her past relevant work, the burden shifts to the Secretary to show that the claimant retains the residual functional capacity (RFC) to do other work that exists in the national economy."[81] Vocational expert testimony that the plaintiff is capable of performing one or more occupations is sufficient to meet the Commissioner's burden at step five.[82] However, when there was a conflict between the vocational expert's testimony and the description in the Dictionary of Occupational Titles ("DOT"), "the ALJ must investigate and elicit a reasonable explanation for any conflict between

---

[79] *Heffernan v. City of Patterson*, 578 U.S. 266, 272 (2016).

[80] R. at 105–114.

[81] *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

[82] *See* 20 C.F.R. § 404.1566(e); *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995).

the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability."[83] SSR 00-4p makes clear that "[w]hen there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled."[84] Failure to resolve the conflict is reversible error, unless the error is harmless.[85]

 In response to the ALJ's hypothetical question at the third remand hearing, the vocational expert identified three positions that a person with the hypothetical limitations could perform: small parts assembler, housekeeping, and sales attendant. The ALJ relied on this testimony in finding that Plaintiff could perform these jobs. However, the ALJ never inquired whether the VE's testimony was consistent with the DOT. The Commissioner concedes that this was a technical error but argues that the harmless error standard still applies. Harmless error occurs where there are "no conflicts between the VE's testimony and the DOT's job descriptions."[86]

 Here, Plaintiff points to two unresolved conflicts between the DOT and the VE's testimony. First, the ALJ limited Plaintiff to occasional overhead reaching. However, the small parts assembler requires constant reaching[87] and the housekeeper cleaner position requires frequent reaching.[88] Second, the ALJ limited Plaintiff to occasional contact with supervisors, co-

---

[83] *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999).

[84] SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2020).

[85] *Poppa v. Astrue*, 569 F.3d 1167, 1173–74 (10th Cir. 2009); *see also Krueger v. Astrue*, 337 F. App'x 758, 761–62 (10th Cir. 2009).

[86] *Poppa*, 569 F.3d at 1174.

[87] DOT 739.687-030, 1991 WL 680180 (Jan.1, 2016).

[88] DOT 323.687-014, 1991 WL 672783 (Jan. 1, 2016).

workers, and the general public. Yet the sales attendant position is inconsistent with this limitation because it requires significant interaction with people.[89] The ALJ failed to elicit any testimony from the VE concerning these conflicts.

The Commissioner responds by arguing that any error is harmless because a significant number of jobs would remain if certain positions were eliminated. Harmless error occurs "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."[90] An error at step five may be harmless where there remain significant jobs in the national economy.[91]

While reversal may not be required for the ALJ's failure to obtain further testimony concerning overhead reaching,[92] the other errors demonstrate that the VE's testimony is not sufficiently reliable to provide substantial evidence in support of the ALJ's decision. The Commissioner makes no argument to suggest that Plaintiff could perform the sales attendant position, instead arguing that even if that position is eliminated, 162,000 jobs would remain between the small parts assembler and housekeeping positions. However, Plaintiff's hand injury makes it doubtful that Plaintiff could perform either of the remaining positions. As noted, the ALJ's decision to include no manipulative limitations in the RFC is not supported by the record. The record demonstrates that Plaintiff has at least some manipulative limitations. Thus, the

---

[89] DOT 299.677-010, 1991 WL 672643 (Jan. 1, 2016).

[90] *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

[91] *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009).

[92] *See Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007).

question is whether Plaintiff can perform the remaining two jobs given these manipulative limitations.

The DOT divides activities between "Constantly"—an activity or condition that exists 2/3 or more of the time; "Frequently"—an activity or condition that exists from 1/3 to 2/3 of the time; "Occasionally"—an activity or condition that exists up to 1/3 of the time; and "Not present."[93] The small parts assembler requires constant fingering and handling, and the housekeeping position requires frequent handling and occasional fingering. Any manipulative restriction at all would eliminate the small parts assembler position. If the ALJ had limited Plaintiff to only occasional handling and fingering with his left dominant hand, as every prior ALJ had done, the vocational expert testified that all positions identified would be eliminated.[94] A vocational assessment obtained by Plaintiff similarly indicates that if an individual is limited to occasional upper extremity use, no light or sedentary occupations would remain.[95] Given the ALJ's failure to include the manipulative restrictions that were supported by the record, there is no reliable evidence that Plaintiff could perform the positions identified by the VE.

D.      AWARD OF BENEFITS

Having concluded that the ALJ's decision is not supported by substantial evidence, the question is the remedy. Plaintiff requests an immediate award of benefits. The decision to award benefits is a matter of the Court's discretion.[96] Some of the relevant factors to consider are the

---

[93] Dictionary of Occupational Titles, Appendix C: Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991).

[94] R. at 1716.

[95] *Id.* at 1863–70.

[96] *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993).

length of time the matter has been pending,[97] and whether "given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits."[98]

      Here, Plaintiff's application has been pending for over a decade. The agency has had four attempts to demonstrate that there are jobs Plaintiff can perform. In each instance, they have erred in their evaluation of Plaintiff's claim. The Appeals Council and this Court have already remanded this case three times. "The Secretary is not entitled to adjudicate a case *ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion."[99] In similar circumstances, an award of immediate benefits has been ordered.[100] While the Commissioner's attorneys have done an admirable job defending the agency before this Court, the tortured history of Plaintiff's claim and the sheer number of errors over the years by the agency weigh in favor of an immediate award of benefits.

      Next, the Court concludes that additional fact finding would not serve a useful purpose. The overwhelming evidence demonstrates that Plaintiff's left hand injury results in manipulative limitations. The ALJ's decision not to include any such limitations is not supported. All previous ALJs limited Plaintiff to occasional fingering and handling. The vocational expert at the latest hearing testified that the three jobs identified would be eliminated if Plaintiff was limited to

---

[97] *Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993).

[98] *Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 545 (10th Cir. 1987).

[99] *Sisco*, 10 F.3d at 746 (internal quotation marks and citation omitted).

[100] *See Huffman v. Astrue*, 290 F. App'x 87, 89–90 (10th Cir. 2008) (remand for an immediate award of benefits where six years had passed since the plaintiff sought benefits and the case had already been remanded).

occasional handling and fingering with his left hand. The report from Plaintiff's vocational

expert supports this testimony. There is simply no evidence that there are jobs that exist in

significant numbers in the national economy that Plaintiff could perform given his combination

of impairments. Remanding once again would serve no useful purpose.

IV.  CONCLUSION

It is therefore

ORDERED that the ALJ's decision is REVERSED AND REMANDED pursuant to

sentence four of 42 U.S.C. § 405(g) for an immediate award of benefits.

DATED this 21st day of November, 2022.

BY THE COURT

PAUL KOHLER
United States Magistrate Judge